UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| WILLIAM HENRY SMITH, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff | ) |  |
|  | ) | CAUSE NO. 3:09-CV-250 RM |
| v. | ) |  |
|  | ) |  |
| DRUG ENFORCEMENT | ) |  |
| ADMINISTRATION, *et al.*, | ) |  |
|  | ) |  |
| Defendants | ) |  |

OPINION AND ORDER

William Henry Smith, a *pro se* prisoner, submitted a Bivens[1] complaint. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the

---

[1] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Though Mr. Smith also cites 42 U.S.C. § 1983, a claim pursuant to that statute requires "that the defendants acted under color of state law." Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006). Because Mr. Smith's claims are against federal defendants, Bivens is applicable, but § 1983 is not.

same standard under § 1915A as when addressing a motion under RULE 12(b)(6). Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> . . . only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. ___, ___; 129 S. Ct. 1937, 1949-50; 173 L. Ed. 2d 868, 884 (2009) (quotation marks and citations omitted).

Mr. Smith alleges that the Drug Enforcement Agency (DEA) and Senior Attorney Kash deprived him of property without due process when his money was taken without notice. Mr. Smith alleges that $5,325 was seized from him on April 24, 2003 and was forfeited to the DEA. This is not the first time that Mr. Smith has litigated over these events.

2

he has tried for many years in his federal criminal case to obtain the return of this money. United States v. Smith, 3:03-CR-058 (N.D. Ind. filed June 12, 2003). In that criminal case, the record shows that the forfeiture was signed by Senior Attorney Douglas A. Kash on September 23, 2003. Id. at DE 95-3 at 1.

Mr. Smith alleges that he wasn't notified prior to the forfeiture. "Plaintiff's first discovery that the aforementioned currency was in any way related to the federal proceedings he is currently incarcerated for was when he received his presentence investigation ("PSI")." Complaint at 3, DE 1. Though he doesn't specify exactly when that happened, it occurred on or before his sentencing hearing on April 2, 2004. Later, on February 27, 2006, the United States Attorney for the Northern District of Indiana mailed notice that his money had been the subject of a state court proceeding, In Re the Matter of Five Thousand Three Hundred Twenty-five and 00/100 Dollars ($5,325.00) in United States Currency, 46D01-0304-FB-38 (LaPorte Superior Court May 21, 2003). United States v. Smith, DE 73. Ultimately Mr. Smith demonstrated actual personal knowledge of the forfeiture when he responded to receiving a copy of the Declaration of Forfeiture on November 1, 2007. Id. at DE 97.

"We determine the statute of limitations for Bivens actions as we determine the statute of limitations for sec. 1983 actions." King v. One Unknown Fed. Correctional Officer, 201 F.3d 910, 913 (7th Cir. 2000).

> For both RICO claims and § 1983 claims, a cause of action accrues when the plaintiff knew or *should have known* that it had sustained an injury. This rule is referred to as the discovery rule because the accrual date is not

3

> determined when the injury occurs but when it is discovered *or should have been discovered. See* Cada v. Baxter Healthcare, 920 F.2d 446, 450 (7th Cir. 1990). In Cada, the court explained that, to the extent that defendants in a fraud case conceal the fraud, "they postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of a fraud." Id. at 451.

Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 688 (7th Cir. 2004) (footnote omitted, emphasis added). Thus the relevant date for beginning a statute of limitation analysis is not the date of the alleged concealed fraud, nor the date of actual discovery, but the date when "in the exercise of reasonable diligence [the plaintiff] should discover, the alleged fraudulent conduct." Id. (quotation mark and citation omitted).

Mr. Smith was sent notice that his money was subject to a State court proceeding on February 27, 2006. Shortly thereafter, through the exercise of reasonable diligence, he could have discovered through the public records of the LaPorte Superior Court that his money had been transferred to the DEA years before. Instead, Mr. Smith waited until August 27, 2007 to make inquiry in the state court. United States v. Smith, DE 91 at 4. This was not reasonable diligence.

"Indiana's two-year statute of limitations . . . is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983." Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 894 (7th Cir. 2001). Because the statute of limitations is the same for Bivens actions, *see* King, Mr. Smith had two years after he should have discovered these claims to initiate this lawsuit. Though it isn't possible to establish an exact date by which he could have uncovered these claims had he exercised reasonable diligence, it is only

4

necessary to find that such a date was more than two years before he filed this suit. Mr. Smith signed this complaint on May 28, 2009. Two years before that date was May 28, 2007, fifteen months after he first learned of the State court proceeding involving his money. With the exercise of reasonable diligence, Mr. Smith could have traced his money from the State court to the DEA in fifteen months. Because these claims weren't filed until after the expiration of the statute of limitations, they are barred and must be dismissed.

Mr. Smith brings one other claim. He alleges that John Hieronymus "knew of and acquiesced to the violation of Plaintiff's due process rights and was aware that Plaintiff was provided no actual notice of the impending forfeiture." Complaint at 6, DE 1.

> Burks's contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, Monell's rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189 (1989), shows that this rule applies to constitutional tort law, as to private tort law, for DeShaney holds that a public employee who knows about a danger need not act to avert it.

Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (parallel citations omitted, brackets in original). The same is true here. John Hieronymus is alleged to have first become involved in this matter sometime between October 16, 2008 and November 25, 2008. Yet Mr. Smith's claim is that he should be personally liable for $50,000 in damages because he knew of events that occurred more than five years before.

> Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop

5

everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients . . .. That can't be right.

Id. at 595. Indeed, it is not right, and Mr. Smith doesn't state a claim against John Hieronymus even if he did know of the alleged events that others perpetrated in 2003.

For the foregoing reasons, the court DISMISSES this case pursuant to 28 U.S.C. § 1915A.

SO ORDERED.

ENTERED: August  20 , 2009

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc: W. Smith